UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SEDE BAKER                                                  CIVIL ACTION

VERSUS

TYRANISSUIN EPHION, ET AL.                NO.: 15-00838-BAJ-RLB

## RULING AND ORDER

Before the Court is the **Motion for Summary Judgment (Doc. 70)** and the **Motion to Dismiss (Doc. 98)** filed by Defendant, Sergeant Tyranissuim Ephion ("Sgt. Ephion"); as well as the **Motion for Summary Judgment (Doc. 124)** and the **Motion to Dismiss (Doc. 123)** filed by Defendants, Lieutenant Colonel Paul Smith ("Lt. Col. Smith"), Lieutenant Jeffrey Franklin ("Lt. Franklin"), and Sergeant F. Vannorman ("Sgt. Vannorman"). All Defendants seek summary judgment in their favor based on Plaintiff-Inmate Sede Baker's ("Plaintiff") alleged failure to exhaust all available administrative remedies. All Defendants also seek a dismissal of the claims brought by Plaintiff under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Plaintiff filed an Opposition to each Motion. (Docs. 72, 129, 127, 108). Sgt. Ephion filed a Reply in Support of the Motion for Summary Judgment. (Doc. 81). The Court has jurisdiction under 28 U.S.C. § 1331. Oral argument is not necessary.

For the following reasons, the **Motions for Summary Judgment (Docs. 70, 124)** are **DENIED**. The **Motions to Dismiss (Docs. 98, 123)** are **DENIED**.

1

Additionally, the **Motion for Leave to File Third Amended Complaint (Doc. 126)** is discussed below. The motion is **DENIED**.

## I. BACKGROUND

Plaintiff is an inmate currently confined at the Louisiana State Penitentiary ("LSP"), in Angola, Louisiana. (Doc. 118). He alleges that on or about March 23, 2015, he was housed in the Jaguar 1 Right Cell #8 when he was attacked by another inmate. (Doc. 118 at ¶ 6). Plaintiff asserts that Defendants Sgt. Ephion, Lt. Col. Smith, Lt. Franklin, and Sgt. Vannorman ("Defendants") were stationed at the dorm and that they knew which inmates were in which cells, and that no inmate could be let into the cell of any other inmate. (*Id.* at ¶ 7). On March 23, 2015, Inmate Norton Hamilton ("Hamilton") was allegedly housed in Cell #7, next to Cell #8. (*Id.* at ¶ 10). According to Plaintiff, one or all of the Defendants allowed Hamilton to exit his cell, Cell #7. (*Id.*). At that time, Hamilton purportedly and noticeably had his hands wrapped in cloth, which was an indication that Hamilton intended to commit an assault. (*Id.*).

Plaintiff alleges that Hamilton then stood in front of Cell #8 and requested that Defendants "Pop Cell # 8," to allow Hamilton to enter Plaintiff's cell either intentionally or "grossly negligent[ly by] failing to merely check the log" to ensure Hamilton was not seeking to enter the wrong cell. (*Id.* at ¶¶ 11–12). Plaintiff was allegedly asleep in his bunk when the attack began. (*Id.* at ¶ 13). Further, Plaintiff contends that Defendants closed Cell #8 with Hamilton inside assaulting him. (*Id.* at ¶ 14). Plaintiff claims that Defendants then walked away, and eventually Lt. Col. Smith opened the cell door and pulled Hamilton out of the cell. (*Id.* at ¶ 16). Plaintiff

required medical attention for the injuries sustained during the alleged attack. (*Id.* at ¶¶ 17–18).

On March 29, 2015, LSP received an Administrative Remedy Procedure ("ARP") complaint from Plaintiff in which he complained of alleged negligence on the part of an unknown officer, which supposedly resulted in the breach of security and the altercation between Plaintiff and Hamilton. (Doc. 124-2 at ¶ 1). Plaintiff's ARP was assigned ARP No. LSP-2015-0807. (*Id.* at ¶ 2; Doc. 69). In the ARP, Plaintiff complained that "unknown security" negligently opened his cell door while he was sleeping, resulting in Hamilton attacking him and causing injury. (Doc. 69 at pp. 3–4). In his request for relief, Plaintiff requested compensation for the injuries sustained due to the "negligent actions of the officer or officers" that allegedly opened his cell door and allowed another inmate to "enter in early morning hours to assault [Plaintiff] as [he] slept." (*Id.*). Notably, the First Step Response Form claimed that "[Lt. Col.] Smith observed another offender run into [Plaintiff's] cell during yard call and begin fist fighting with [Plaintiff]." (Doc. 69 at p. 7). Additionally, Lt. Franklin responded to the ARP by asserting that "[a]t no time was [Plaintiff's] cell opened intentionally to let another offender into his cell." (*Id.* at p. 16).

After his request for relief was denied at the Second Step, Plaintiff filed his original Complaint on December 14, 2015. (Doc. 1). Plaintiff filed his First Amended Complaint on July 22, 2016, to properly name Defendant "Sgt. Tyranissuin Ephion" by correcting the spelling of her name. (Doc. 35). Plaintiff filed his Second Amended Complaint on August 12, 2017, naming three additional Defendants, Lt. Col. Smith, Lt. Franklin, and Sgt. Vannorman. (Doc. 118). He also alleged that these Defendants,

as well as Sgt. Ephion, violated his rights by failing to protect him from attack by another inmate. (*Id.*). Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, against all Defendants in their individual capacities, for a violation of his Fourth[1] and Eighth Amendment rights to be free from cruel and unusual punishment and the use of excessive force while being detained or incarcerated. (*Id.* at ¶ 22). Plaintiff also alleges a state law claim of negligence against all Defendants. (*Id.* at ¶ 25).

## II. MOTION FOR SUMMARY JUDGMENT

### 1. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and footnote omitted).

In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) (citing *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir. 1994)). At this stage, the Court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d

---

[1] Plaintiff's Second Amended Complaint asserts violations of "his 4th and 8th Amendment right to be free from cruel and unusual punishment;" however, neither party addresses whether the Fourth Amendment is the proper constitutional provision to bring claims under 42 U.S.C. 1983 for deliberate indifference under the facts of this case. As such, the Court requires additional information regarding the parties' positions on this claim and defers judgment at this time.

1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the motion for summary judgment must be denied. *Int'l Shortstop, Inc.*, 939 F.2d at 1263. On the other hand, the non-movant's burden is not satisfied merely upon a showing of "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-movant] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

### 2. Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is a mandatory prerequisite to the filing of a suit by a prisoner

5

challenging prison conditions. *Abbott v. Babin*, 587 F. App'x 116, 118 (5th Cir. 2014) (per curiam) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A properly exhausted claim is one which has "complete[d] the administrative review process in accordance with the applicable procedural rules." *Id.* (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Those rules "are defined not by the PLRA, but by the prison grievance process itself." *Id.* (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)). When defendants seek to avail themselves of the affirmative defense of failure to exhaust, they bear the burden of showing that administrative remedies were not exhausted. *Id.*

The Louisiana Administrative Code ("LAC") provides to all prisoners in the Louisiana prison system a procedure for filing ARP's. *See* La. Admin. Code Tit. 22, Pt. I, § 325. The ARP is a three-step process: "Screening," "First Step," and "Second Step." *Id.* at § 325(J). Initially, an ARP Screening Officer reviews all requests and may reject a request only if it meets one of ten enumerated restrictions.[2] *Id.* at § 325(I). After an ARP's acceptance, the "First Step" involves an investigation by prison staff; the results of the investigation and any proposed remedies are presented in a "First Step Response" form. *Id.* at § 325(J)(1)(a). If the prisoner is dissatisfied with the response, an appeal may be taken to the Secretary of the Department of Public Safety and Corrections, who provides his conclusion, or that of his designee, on the

---

[2] The ten enumerated restrictions are (1) the matter is not appealable through the ARP process, (2) there are specialized administrative remedy procedures in place for the specific type of complaint, (3) it is a duplicate request, (4) the complaint concerns an action not yet taken or a decision which has not yet been made, (5) the offender has requested a remedy for another offender, (6) the request was not written by the offender and a waiver was not approved, (7) the offender has requested a remedy for more than one incident (a multiple complaint), (8) established rules and procedures were not followed, (9) there has been a time lapse of more than 90 days between the event and the initial request, and (10) the offender does not request some type of remedy. La. Admin. Code Tit. 22, Pt. I, § 325(I).

6

"Second Step Response" form. *Id.* at § 325(J)(1)(b). If the prisoner is still dissatisfied, suit may be filed in district court. *Id.* at § 325(J)(1)(b)(iv). Here, neither party disputes that Plaintiff went through all three steps of the process; rather the dispute is whether Plaintiff did so "properly" and in compliance with procedural rules.

In Louisiana, a prisoner commences the complaint process by completing a request for administrative remedy or writing a letter to the warden, in which he briefly sets out the basis for his claim, and the relief sought. La. Admin. Code Tit. 22, Pt. I, § 325 (G)(1)(a)(i). The LAC provides that "[o]riginal letters or requests to the warden should be as brief as possible. [Prisoners] should present as many facts as possible to answer all questions (who, what, when, where and how) concerning the incident." *Id.* at § 325(G)(1)(a)(iii). Nonetheless, § 1997e(a) does not provide instructions on how specific a prisoner's administrative grievances must be, but as a general matter, courts typically require that the grievance provide prison officials "fair notice" of the problem that will form the basis of the prisoner's suit. *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004). In deciding how much detail is required in a given case, a court must interpret the exhaustion requirement in light of its purposes, which include the goal of giving officials "time and opportunity to address complaints internally." *Id.* (quoting *Porter*, 534 U.S. at 525). Thus, in deciding whether the grievance gives officials an opportunity to address the problem, the Court will consider whether the grievance provides the type of information that the LAC rules require.

Defendants argue that Plaintiff failed to exhaust administrative remedies because they were not provided fair notice of Plaintiff's specific complaints against

them in relation to the alleged Eighth Amendment failure to protect and use of excessive force claims. (Doc. 70-1 at p. 10, Doc. 124-1 at p. 9). Further, Defendants argue that Plaintiff also failed to exhaust administrative remedies because he does not allege in his grievance that either of the Defendants (by name) violated his Eighth Amendment rights by failing to protect him from the attack by Hamilton. (*Id.*). Particularly, they assert that there is no mention in the ARP regarding neither of the Defendants. (*Id.*) Further, that Plaintiff failed to allege that they subjected him to cruel and unusual punishment or the use of excessive force. (*Id*).

As a general matter, several courts have observed that a prisoner, who is typically uncounseled during the grievance process, need not present legal theories in his grievances. *Johnson*, 385 F.3d at 517. (citations omitted). The purpose of the exhaustion requirement is to give prison administrators an opportunity to address a problem, and they can do so even where the prisoner fails to specifically identify the constitutional provisions that the problem implicates. Further, LAC rules specifically instruct inmates to provide as many facts as possible, to answer all questions (who, what, when, where and how), and not to provide legal terminology.

Here, Plaintiff's grievance refers to Defendants' failure to protect him from the assault while asleep in his cell. (Doc. 69 at p. 3). Plaintiff did not specifically name the Eighth Amendment, but he was not required to. Plaintiff asserted that his attacker was locked inside his cell, which he contends was a "clear-cut security breach [that] seriously jeopardized [his] safety [and his] life." (*Id.*). Further, Plaintiff's ARP also provided that "[s]omeone had opened [his] cell, let [Hamilton] in while [he] was sleeping, and locked [Hamilton] in the cell with [him]." (*Id.*). As a result, the prison

8

was able to conduct a full investigation into the matter, and the investigation revealed, at the least, that Lt. Col. Smith and Lt. Franklin had personal knowledge or involvement in the incident. (Doc. 69). Therefore, the Court finds Plaintiff's grievance to be sufficient to both provide the prison with "fair notice" and an opportunity to fully address the grievance, without the need to mention all four Defendants by name. *See e.g. Jones*, 549 U.S. at 217 (The PLRA requires exhaustion of "such administrative remedies as are available," but nothing in the statute imposes a "name all defendants" requirement). *See also Jones*, 549 U.S. at 219 (citing *Johnson*, 385 F.3d at 522 ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation")); *see id.* Brief for American Civil Liberties Union et al. as *Amici Curiae* 8–9, and n. 6 (collecting grievance procedures and noting that the majority do not require prisoners to identify specific individuals). Therefore, the motions for summary judgment are DENIED.

### III. MOTION TO DISMISS

#### 1. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court "accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

### 2. Plaintiff's § 1983 Individual Capacity Claims

Plaintiffs suing governmental officials in their individual capacities, must allege specific conduct giving rise to a constitutional violation. *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). Plaintiffs "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 556 U.S. at 676. Vicarious liability is inapplicable to § 1983 actions. *Id.* In other words, an official must be personally involved in a constitutional violation to state a claim for relief.

Qualified immunity also shields government officials, performing discretionary functions, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome a qualified immunity defense, a plaintiff must allege a violation of a constitutional right and show that "the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818). And yet, "[e]ven if the government official's conduct violates a clearly established right, the official is entitled to immunity if his conduct was objectively reasonable." *Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008). It is well-established within the Fifth Circuit that "[w]hen a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

a. Eighth Amendment Failure to Protect Claim

Under the Eighth Amendment, prison officials "have a duty . . . to protect prisoners from violence at the hands of other inmates." *Johnson*, 385 F.3d at 524 (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To succeed on such a claim, "the [victim] inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison officials acted with "deliberate indifference" to the inmate's safety. *Id.* (quoting *Farmer*, 511 U.S. at 834). An official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer*, 511 U.S. at 837). The official's knowledge of the risk can be proven through circumstantial evidence, such as by

11

showing that the risk was so obvious that the official must have known about it. *Id.* (citing *Farmer*, 511 U.S. at 842).

Defendants argue that they are entitled to qualified immunity because Plaintiff failed to allege that they were subjectively aware of a substantial risk of serious harm to Plaintiff, and that they disregarded that risk and/or refused to take steps to prevent Plaintiff's attack. (Doc. 98-1 at p. 4; Doc. 123-1 at p. 8). Defendants further argue that Plaintiff has failed to set forth sufficient facts regarding which actions or omissions of Defendants violated his Eighth Amendment rights. (*Id.*). Plaintiff contends that Defendants committed the alleged actions knowingly and willfully in violation of his rights and that such acts amounted to a deliberate indifference to his safety, which constituted a failure to protect. (Doc. 118 at ¶ 15). Plaintiff further asserts that prison officials have a clearly established duty to protect inmates from harm and to take reasonable measures to protect their safety under the Eighth Amendment, which was well established at the time of the incident. (Doc. 108 at p. 3).

The Court concludes that Plaintiff has alleged facts sufficient to support a claim that Defendants were deliberately indifferent to a substantial risk of serious harm in failing to protect Plaintiff from the co-inmate. Specifically, Plaintiff has alleged that Defendants were aware that only one inmate may be present in each cell, and that they opened his cell (either intentionally or negligently), which allowed Hamilton to enter his cell and attack him. (Doc. 118 at ¶¶ 7, 11–12). Plaintiff asserts that as Hamilton stood in front of Cell # 8, not only did he request to Defendants to "Pop Cell # 8," he allegedly had cloth wrapped around his hands, which should have

been an indication to Defendants that Hamilton was planning an attack. (*Id.* at ¶¶ 11–12). The fact that Hamilton may have had cloth around his hands is sufficient for the Court to infer that Defendants were aware of a substantial risk of harm to Plaintiff's safety because hand/wrist wraps are commonly used to protect the hand and wrist against injuries induced by punching. *See e.g., Valenzuela v. Macomber*, 2016 WL 7451467, at *7 (E.D. Cal. Dec. 27, 2016) (in which the court upheld a guilty verdict where the "[prisoner] prepared for a confrontation by . . . wrapping his face and hands in cloth.").

Furthermore, Plaintiff alleges that "SERGEANT EPHION, LT. COL. PAUL SMITH, LT. JEFFREY FRANKLIN and/or SGT. F. VANNORMAN [] walked away" after closing his cell with Hamilton inside assaulting him and that "LT. COL. PAUL SMITH came and opened the cell door and pulled Hamilton out of the cell." (*Id.* at ¶ 16). The Court finds that Plaintiff's allegation that Defendants "walked away" is sufficient to show, at this stage, that Defendants were deliberately indifferent and thus, may not be entitled to qualified immunity. Thus, Plaintiff has established a factual basis for concluding that Defendants may have been personally aware that Plaintiff faced a substantial risk of serious harm on the referenced date and consciously chose to ignore that risk by allegedly providing Hamilton access to Plaintiff's cell. Therefore, the motions to dismiss are DENIED.

IV. **MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

On May 5, 2017, the Court issued a Scheduling Order providing, *inter alia*, that the deadline to amend the pleadings was July 17, 2017 (Doc. 65), but the Court later extended that deadline to September 22, 2017. (Doc. 109). Plaintiff filed the

13

instant motion to amend on November 24, 2017. (Doc. 126). Plaintiff seeks leave to amend the complaint to add additional factual allegations against Defendants. (Doc. 126 at 1). In opposition, Defendants argue that Plaintiff's proposed amendments are futile and/or a result of undue delay, and should be denied pursuant to Rule 15 of the Federal Rules of Civil Procedure.

Plaintiff seeks amendment pursuant to Rule 15(a)(2), which provides that after the period for amending as a matter of course elapses, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). After a scheduling order is in place, however, amendments to pleadings beyond the date set by the scheduling order are governed by Rule 16 of the Federal Rules of Civil Procedure, which requires a showing of "good cause" for modifying the deadline set by the scheduling order. *See S & W Enter., LLC v. South Trust Bank of Alabama*, 315 F.3d 533, 536 (5th Cir. 2003). In order to show "good cause" the party seeking modification must show the deadlines could not "reasonably be met despite the diligence of the party needing the extension." *S & W Enter.*, 315 F.3d at 545 (citation omitted). The Court considers four factors for determining whether "good cause" exists to grant an untimely motion to amend a pleading: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *See id.* (citing *Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997)).

Here, the deadline to amend the pleadings expired on July 17, 2017. (Doc. 65). The Court extended that deadline to September 22, 2017, for the sole purpose of providing Plaintiff with the opportunity to name additional defendants after the review of certain documents. (Doc. 109). Accordingly, the instant motion to amend, which was filed on November 24, 2017, is untimely and subject to the "good cause" requirement of Rule 16.

Plaintiff does not address the requirements of Rule 16 or otherwise establish good cause for modifying the Court's deadlines to allow the amendments sought. Plaintiff seeks amendment of the pleadings over four months after the original deadline to do so, and over two months after a limited extension of that deadline for the sole purpose of adding additional defendants. Plaintiff does not establish that he was diligent in seeking the instant proposed amendments. Plaintiff does not otherwise identify any discovery or other information obtained after the deadline to amend that alerted Plaintiff to the need to seek the instant amendments. Plaintiff does not address the substance of the proposed amendments in support of his motion, much less establish the importance of the proposed amendments.[3] Finally, Plaintiff does not address the potential prejudice that may result in failing to allow the amendments. Therefore, the motion for leave to amend is DENIED.

---

[3] Plaintiff offers a conclusory paragraph asserting that "[t]he Third Amended Complaint moots the exceptions." (Doc. 126 at ¶2). Based on the briefing from Defendants, this assertion is disputed.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion for Summary Judgment (Doc. 70)** filed by Sgt. Ephion is **DENIED**.

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Doc. 124)** filed by Lt. Col. Smith, Lt. Franklin, and Sgt. Vannorman is **DENIED**.

**IT IS FURTHER ORDERED** that the **Motion to Dismiss (Doc. 98)** filed by Sgt. Ephion is **DENIED**.

**IT IS FURTHER ORDERED** that the **Motion to Dismiss (Doc. 123)** filed by Lt. Col. Smith, Lt. Franklin, and Sgt. Vannorman is **DENIED**.

**IT IS FURTHER ORDERED** that the **Motion for Leave to File Third Amended Complaint (Doc. 126)** is **DENIED**.

Baton Rouge, Louisiana, this 19th day of February, 2018.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA